[No. 21060-0-III.   Division Three.   November 6, 2003.]

DEBORAH LOUISE SCHUCHMAN, *Individually and as Guardian, Appellant,* v. LEON HOEHN, ET AL., *Respondents.*

*D. Michael Tomkins*, for appellant.

*J. Scott Miller* (of *Miller, Devlin, McLean & Weaver, P.S.*), for respondents.

SCHULTHEIS, J. — The Industrial Insurance Act immunizes employers from civil liability for most workplace injuries. RCW 51.04.010; *Meyer v. Burger King Corp.*, 144 Wn.2d 160, 164, 26 P.3d 925 (2001). One exception created by statute allows a worker to sue for excess damages if the injury was caused by "the deliberate intention of his or her employer to produce such injury." RCW 51.24.020. Fourteen-year-old Mallory Webley was seriously injured while bagging ice at Okanogan Ice Company. The Department of Labor and Industries (L&I) determined that Mallory was an employee covered under the Act. Her mother, Deborah L. Schuchman, sued Leon and Leashia Hoehn, owners of Okanogan Ice Company, for damages. The Hoehns' motion for summary judgment dismissal on the basis of employer immunity under the Act was granted and Ms. Schuchman appeals, contending RCW 51.24.020 is unconstitutional as applied to injured minor workers. Because we find that the legislature intended to include minors in the class of workers subject to workers' compensation remedies and restrictions, and because we further find that the Hoehns were entitled to summary judgment as a matter of law, we affirm.

FACTS

During the summer of 2000, Mallory came to stay with the Hoehns and their daughter Kelsey. Mallory and Kelsey shared a job bagging ice at the Hoehns' ice company. On August 7, the girls were working at the ice-making machine. After Kelsey filled the plastic bags, Mallory stapled them shut. One bag was overfilled and Mallory took it to a bin to dump out the excess. This bin was equipped with an auger at the bottom of a funnel-shaped tub. The auger moved the spilled ice back into the ice machine for reuse. Mallory dropped the bag of ice into the bin, and while she attempted to retrieve it, her hands and arms were pulled into the auger. Kelsey quickly hit the emergency off switch, but Mallory's hands and arms were already severely damaged. According to Ms. Schuchman and another witness, Ms. Hoehn approached Ms. Schuchman at the hospital and stated, "We knew this was going to happen, we just didn't know when. We just didn't know how to fix it. . . . Leon has fixed it now with a mesh like web covering. We call it the Webley." Clerk's Papers (CP) at 47 (emphasis omitted).

An initial claim for medical coverage filed with L&I in August 2000 was rejected because the department could not substantiate that Mallory was an employee at Okanogan Ice Company. After further investigation, however, L&I determined that Mallory was employed in a job covered by industrial insurance and reversed the rejection order in October. Mallory appealed the determination of coverage in March 2001, but later withdrew the appeal and acknowledged that she was a covered employee.

In December 2001 Ms. Schuchman, in her capacity as Mallory's legal guardian, filed an amended complaint against the Hoehns for damages caused by knowing failure to use due care, failure to supervise Mallory, and knowingly allowing a minor to operate dangerous machinery with certainty of injury. Later that month, the Hoehns moved for summary judgment dismissal of the action, arguing that Ms. Schuchman's exclusive remedy was under Title 51

RCW, the Industrial Insurance Act. After a hearing in March 2002, the trial court found that Mallory was limited to recovery under workers' compensation and did not meet the requirements for the "deliberate intent" exception of RCW 51.24.020. The trial court granted the motion for summary judgment dismissal of the complaint and Ms. Schuchman now appeals.

EMPLOYER IMMUNITY FOR INJURIES TO MINOR WORKERS

■■ Enacted in 1911, Washington's Industrial Insurance Act, Title 51 RCW, establishes compulsory state industrial insurance that provides swift compensation to injured workers to the exclusion of every other remedy. *McIndoe v. Dep't of Labor & Indus.*, 144 Wn.2d 252, 256, 26 P.3d 903 (2001); *Hildahl v. Bringolf*, 101 Wn. App. 634, 640, 5 P.3d 38 (2000). As noted in *Meyer*, 144 Wn.2d at 164, the Act is a compromise between workers and employers, a compromise that "abolishes most civil actions arising from on-the-job injuries and replaces them with the exclusive remedy of industrial insurance benefits."

The coverage of Washington's Act is very broad, excluding " 'every other remedy, proceeding or compensation,' " except those subject to specific exceptions in Title 51 RCW. *West v. Zeibell*, 87 Wn.2d 198, 201, 550 P.2d 522 (1976) (quoting RCW 51.04.010). One of those exceptions, RCW 51.24.020, provides that when an injury is the result of

> the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

In using RCW 51.24.020 to pierce the statutory shield protecting employers, the employee must prove first, that the employer had actual, certain knowledge that injury would occur; and second, that the employer willfully disregarded that knowledge. *Birklid v. Boeing Co.*, 127 Wn.2d

853, 865, 904 P.2d 278 (1995); *Judy v. Hanford Envtl. Health Found.*, 106 Wn. App. 26, 31-32, 22 P.3d 810, *review denied*, 144 Wn.2d 1020 (2001).

Ms. Schuchman contends Washington's public policy protecting children is thwarted by Title 51 RCW, particularly by the requirement that a minor worker must prove that his or her employer had certain knowledge that injury would occur. She argues that RCW 51.24.020 is unconstitutional as applied because it fails to provide an exception for minor workers that takes into consideration their protected status.

▮▮▮ Preliminarily, we note that Ms. Schuchman articulates no clear basis for her constitutional argument beyond asserting that RCW 51.24.020 violates equal protection and that strict or heightened scrutiny of the statute is required. She also fails to designate whether she bases her argument on the federal or the state constitution. Consequently, we address only the federal equal protection analysis. *See Harris v. Dep't of Labor & Indus.*, 120 Wn.2d 461, 476 n.10, 843 P.2d 1056 (1993); *Clark v. Pacificorp*, 118 Wn.2d 167, 192, 822 P.2d 162 (1991). RCW 51.24.020 is presumed constitutional and Ms. Schuchman carries the burden of proving unconstitutionality beyond a reasonable doubt. *Retired Pub. Employees Council of Wash. v. Charles*, 148 Wn.2d 602, 623, 62 P.3d 470 (2003); *Clark*, 118 Wn.2d at 193.

▮▮▮ The equal protection clause of the Fourteenth Amendment provides in part that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "Equal protection does not require that all persons be dealt with identically, but it does require that the distinction made have some relevance to the purpose for which the classification is made." *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 174, 949 P.2d 365 (1998).

▮▮▮ The first step in an equal protection analysis is to establish the appropriate standard of review. *Willoughby v. Dep't of Labor & Indus.*, 147 Wn.2d 725, 739, 57 P.3d 611

(2002) (quoting *Tunstall v. Bergeson*, 141 Wn.2d 201, 225, 5 P.3d 691 (2000 )). Washington's Industrial Insurance Act is generally recognized as economic legislation for the purposes of an equal protection analysis. *Willoughby*, 147 Wn.-2d at 738-39; *Clark*, 118 Wn.2d at 193. Economic legislation that neither sets up a suspect class nor affects a fundamental right is subject to the rational basis test. *Willoughby*, 147 Wn.2d at 739; *Harris*, 120 Wn.2d at 477. Suspect classifications include those based on race, alienage, or national origin. *State v. Schaaf*, 109 Wn.2d 1, 18, 743 P.2d 240 (1987). The class created by RCW 51-.24.020—all workers injured by the deliberate intention of the employer—is not suspect, and the right to compensation under this statute does not implicate a fundamental right. *See Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 755, 696 P.2d 1238 (1985) (the Act does not violate equal protection by immunizing negligent employers from civil suits).

Ms. Schuchman contends the legislature created a distinct suspect or semisuspect class of minor workers when it adopted regulations barring minors from particularly hazardous tasks and occupations and passed statutes protecting child welfare.[1] She contends RCW 51.24.020 illegally treats minor workers differently than minors who do not work, denying minor workers the protections due to them by law. In *Schaaf*, the court addressed an argument that "juveniles are a semi-suspect class because they are politically powerless and vulnerable to mistreatment by society." 109 Wn.2d at 18. Rejecting that argument, *Schaaf* found that although minors cannot vote and thus are politically powerless, the social integration of minors—unlike the social insulation of minorities—means that they tend to be treated with concern and respect by the legislature. 109 Wn.2d at 18-19 (quoting *City of Cleburne v. Cleburne Living*

---

[1] Ms. Schuchman cites as examples WAC 296-128-305 (fair compensation); WAC 296-125-0265 (written parental consent); WAC 296-125-0264 (employer's disclosure of location and duties); WAC 296-125-0260 (filing of minor work form); WAC 296-128-400 (employment prohibited to all minors); and WAC 296-125-033 (employment prohibited to minors under age 16).

*Ctr.*, 473 U.S. 432, 472 n.24, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (Marshall, J., concurring and dissenting)). Citing the *Cleburne* plurality decision, *Schaaf* concluded that "juveniles form neither a suspect nor semi-suspect class for equal protection purposes." *Id.* at 19. *Schaaf* is controlling precedent for the related rule that juvenile workers are not a suspect or semisuspect class.

Because the classification of workers—including minor workers—in RCW 51.24.020 is neither suspect nor semisuspect, we apply the rational basis test to Ms. Schuchman's equal protection claim. *Harris*, 120 Wn.2d at 477. We ask first, whether the statutory classification applies alike to all members of the class; second, whether reasonable grounds distinguish those within the class from those outside it; and third, whether the class has a rational relationship to the purpose of the statute. *Willoughby*, 147 Wn.2d at 739; *Nielson v. Wolfkill Corp.*, 47 Wn. App. 352, 358-59, 734 P.2d 961 (1987).

RCW 51.24.020 satisfies the first prong of the rational relationship test because the classification of covered employees applies alike to all injured workers, whatever their race, gender, or age. Ms. Schuchman addresses the second prong when she argues that RCW 51.24.020 creates an irrational distinction between minor workers and minors who do not work. She contends the public policy protecting minors supports a lower standard for escaping the exclusivity of Title 51 RCW. Rather than the requirement that a minor prove that the employer had a "deliberate intention" to harm under RCW 51.24.020, she advocates a gross negligence standard.

Washington courts have consistently held that, at least when adult workers are concerned, RCW 51.24.020 requires proof of more than gross negligence. *See, e.g., Folsom v. Burger King*, 135 Wn.2d 658, 664-65, 958 P.2d 301 (1998); *Nielson*, 47 Wn. App. at 356. Neither the failure to follow safety procedures nor acting with a substantial certainty of producing injury constitutes the specific intent to injure that triggers operation of the RCW 51.24.020 exception to

employer immunity. *Folsom*, 135 Wn.2d at 665. The employer must have "actual knowledge that injury is certain to occur and willfully disregards that knowledge." *Id.* at 667 (emphasis omitted).

Ms. Schuchman's argument that injured minor workers should not be subject to the deliberate intention standard is without precedent. It has long been settled that Washington courts include minors in the class of workers subject to the exclusive remedies of the workers' compensation laws. *See Ledesma v. A.F. Murch Co.*, 87 Wn.2d 203, 550 P.2d 506 (1976); *Rasi v. Howard Mfg. Co.*, 109 Wash. 524, 528, 187 P. 327 (1920). Even children employed unlawfully in hazardous occupations are considered workers within the provisions of the Act. *Ledesma*, 87 Wn.2d at 205; *Rasi*, 109 Wash. at 528. The legislature has seen no reason in the long history of the Act to apply separate standards for minor workers. Minors are subject to the same compromise that guarantees sure and swift compensation for on-the-job injury in exchange for employer immunity to civil suits. *Meyer*, 144 Wn.2d at 164. Consequently, Ms. Schuchman fails to satisfy the second prong of the rational basis test because she cannot show that RCW 51.24.020 unreasonably prevents minor workers from enjoying the same protections as nonworking minors.

As for the third prong of the rational relationship test, Ms. Schuchman fails to show that the classification created by RCW 51.24.020 does not have a rational relationship to the legitimate purpose of the Act. Review under the rational basis test is "highly deferential to the legislature." *In re Det. of Thorell*, 149 Wn.2d 724, 749, 72 P.3d 708 (2003). As long as the state advances a reasonable governmental objective, we must disregard alternative methods of achieving the objective, even methods that we may have preferred. *Id.* The party challenging the legislative classification carries the burden of showing that it is purely arbitrary. *Id.*

The declared purpose of the Act is to provide

> sure and certain relief for workers, injured in their work, . . . regardless of questions of fault and to the exclusion of every

other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

RCW 51.04.010. In 1911, the legislature saw the need for this Act in the increased incidence of "inevitable" work injuries, the slow and uncertain remedy available to the injured worker, and the fact "that little of the cost of the employer has reached the worker and that little only at large expense to the public." *Id.* Because common law tort actions were inadequate to address employee injury due to their reliance on the concept of fault and their weakness to defenses of assumption of risk, contributory negligence, and the fellow servant doctrine, workers' compensation laws were widely adopted nationwide to provide swift reparation as well as to shield employers from liability for their own negligence. Jeremy S. Sosin, Note, *The Price of Killing a Child: Is the Fair Labor Standards Act Strong Enough to Protect Children in Today's Workplace?*, 31 VAL. U. L. REV. 1181, 1195-98 (1997). "Each worker injured in the course of his or her employment" is subject to the terms of the Act. RCW 51.32.010. The inclusion of minor workers in the classification of workers is intentional, evident in the statute that provides that minor workers are deemed sui juris for the purposes of Title 51 RCW. RCW 51.04.070. The clear governmental objective of the Act—as well as Ms. Schuchman's failure to show that including minors in the classification of covered workers was entirely arbitrary—defeats her constitutional challenge.

### SUMMARY JUDGMENT

■ Because Ms. Schuchman appears to challenge the basis for the summary judgment as well, we next address her contention that the Hoehns had the requisite specific intent that triggers the exclusivity exception found in RCW 51.24.020. We review the trial court's summary dismissal of her complaint de novo, engaging in the same inquiry as the

trial court and affirming summary judgment if there is no issue of material fact and if the Hoehns are entitled to judgment as a matter of law. *Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 389, 47 P.3d 556 (2002); *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998). All facts are interpreted in the light most favorable to Ms. Schuchman. *Minton*, 146 Wn.2d at 389.

■ To support her contention that the Hoehns were so grossly negligent that their behavior constituted intent to injure Mallory, Ms. Schuchman alleges violations of six child labor regulations (*see supra* note 1) and intentional placement of Mallory in a position of danger without supervision. Even if Ms. Schuchman can show that the Hoehns violated several child labor regulations, the deliberate intention required for RCW 51.24.020 means that the Hoehns must have had certain knowledge that Mallory would be injured by the ice auger and that they willfully disregarded that knowledge. *Folsom*, 135 Wn.2d at 665. Although Ms. Hoehn reportedly admitted that she and her husband "knew this was going to happen" but just did not know when, this admission does not show actual knowledge that Mallory was certain to be the injured party. CP at 47 (emphasis omitted). As noted above, an employer acting with even a substantial certainty that injury will occur to the employee does not have the requisite specific intent to injure that triggers the RCW 51.24.020 exception to employer immunity. *Folsom*, 135 Wn.2d at 665.

Gross negligence and the failure to follow safety procedures is not enough to show deliberate intention. *Id*. The Hoehns presented evidence that they had a license to employ children as ice baggers. Their machine containing the ice auger exhibited numerous warning signs. Nothing in the record indicates that the machine had injured anyone else. Viewing the evidence in the light most favorable to Ms. Schuchman, we fail to find sufficient evidence to support her allegation that the Hoehns knew Mallory was certain to injure herself in the auger, or that they willfully disregarded such knowledge. *Minton*, 146 Wn.2d at 389. Conse-

quently, her challenge to the summary judgment dismissal of the complaint must fail.

Affirmed.

Brown, C.J., concurs.

Kato, J. (dissenting) — I agree with the majority that the constitutional challenge fails. But in my view, genuine issues of material fact preclude summary judgment with respect to the applicability of the exception in RCW 51-.24.020.

All facts must be interpreted in a light most favorable to the nonmoving party. *Marquis v. City of Spokane*, 130 Wn.2d 97, 922 P.2d 43 (1996). RCW 51.24.020 provides an exception to the immunity granted employers under the Industrial Insurance Act, Title 51 RCW, when an employer deliberately injures an employee:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

" 'Deliberate intention' means the employer must have actual knowledge an injury was certain to occur and willfully disregards that knowledge." *Folsom v. Burger King*, 135 Wn.2d 658, 665, 958 P.2d 301 (1998) (quoting *Birklid v. Boeing Co.*, 127 Wn.2d 853, 865, 904 P.2d 278 (1995)).

After the accident, Leashia Hoehn said, "We knew this was going to happen, we just didn't know when. We just didn't know how to fix it. . . . Leon has fixed it now with a mesh like web covering. We call it the Webley." Clerk's Papers at 47. The employer thus acknowledged she knew that an injury was certain to occur. The first prong is satisfied. The second prong requires willful disregard of that knowledge. Although Ms. Hoehn said they did not know how to fix the problem, her husband was able to fashion a relatively simple remedy after the accident.

Viewed in a light most favorable to the appellant, these facts can lead to the reasonable inference that the Hoehns willfully disregarded their admitted knowledge of certain injury. The second prong is satisfied as well.

For these reasons, I respectfully dissent.